Culley, v. Cumberland Valley School District, Mr. Walls, and Ms. Graham. Good morning. May it please the Court, I'm Mark Sheremy Walls on behalf of Sweet-Stevens Cats and Williams, and we represent the Cumberland Valley School District. With the Court's permission, I'd like to reserve three minutes for rebuttal. Thank you, Your Honor. Your Honor, the Supreme Court has cautioned courts not to substitute their own ideas of sound educational policy for those of educational officials that they are reviewing. That's exactly what happened here. The District Court overruled the determination of a certified school psychologist. The certified school psychologist had found, not that this is a student who should be supported with a 504 service agreement, meaning he can be accommodated with the regular education curriculum, and the record supports that determination. But the school psychologist was critical of the parent's report, expert report, saying it was conclusory. But some of the school psychologist's conclusions were conclusory also, saying that the parents have to prove the student required special education by reason of the Crohn's disease, almost insisting that they rule out every other factor. Did that psychologist really consider the independent evaluation that the parents submitted, which was extremely specific? Yeah. Your Honor, you're referring to the hearing officer. The first determination was made by the school district. I'm sorry. And the school district's school psychologist, which said 504, not an IEP. Right. And considered all the detailed record, the District Court did not go into why that evaluation was wrong, other than necessarily that it got the wrong conclusion. Well, no. It also talked about the hearing officer report as being, you know, conclusory and criticizing what the parents had produced. It seems to me that the District Court was right, that they were almost requiring the parents to eliminate every other possible cause, whereas it seemed like this student's declining performance could easily have been the advance of this disease. Well, the District Court combines a bunch of different issues, including the fact that they're combining Crohn's disease with math difficulty, which are not related. And so the only area of specially designed instruction that is suggested even by the parents' private evaluator is math. But it's not just specially designed instruction. It's methodology. The student could not really focus, couldn't do things in a quick way, had to take time, was fatigued, lacked energy. A lot of the things that seem to be associated with this disability. And I don't know how a student in this kind of situation who can't focus and can't assimilate a whole lot of information at the same time and, you know, is constantly fatigued and lacking energy, how they should not need special education. Well, and the difference is that he needs an accommodations plan, that he needs, when he is going to be absent, he needs time to be able to make up that work and a copy of teacher's notes. He needs to have assignments modified if he is absent for a long period of time. That's why that's in the 504 service agreement. The question is, can he still participate in the regular education curriculum? And the answer is a bright student with average achievement scores. And the district court does not get into the second prong of that IDA eligibility, which is the need for specially designed instruction. If the parent's expert is saying the only area of specially designed instruction is math, which is not related to Crohn's, it's not related to the concerns that you're suggesting. I don't think that's what they're saying. That if it's related to a specific learning disability in math, then we look at the hearing officer's determination that that's inconsistent with six years of proficient and advanced standardized test scores. It's consistent with the independent evaluators on test scores, which show scores above 100 in math. It doesn't make any sense to say that if you're testing in the average range that you'd qualify as a specific learning disability. Because the hearing officer doesn't say this is only math and math was fine. He said that there's no connection between the requirement and Crohn's disease. Yes. What he's suggesting is that there's no connection, as I understand your question. What they're suggesting is there's no connection between the declining performance and the instructor goes out to J.C.'s house, and he refuses to participate in instruction. He said, I would rather go skateboarding with my friends. I'm not doing it. That's not Crohn's disease. That's just he refuses to participate. The psychiatric about it. What he says is the reason for the problem? The hearing officer? Yes. Well, he says that the declining test scores and declining attendance are not causally tied to Crohn's disease. And that's essentially the question for the court is. I thought the evaluation report concluded that the J.C. did not have a disqualifying or a qualifying disability. It recommended that he. From the get go. It recommended that he be accommodated with a 504 service agreement. So he didn't have a IDEA disability because that's a term of art under the Code of Federal Regulations. So in effect, the blanket statement is being made that Crohn's disease cannot be a qualifying disability. No, that's that's not what I'm saying, your honor. What I'm saying is that. What did the evaluation report? The evaluation report concluded that he was not eligible under the IDEA. He was eligible under Section 504. He actually remained eligible under Section 504. What's the difference? So under 504 service agreement, he would be accommodated, meaning we're not changing the curriculum. We're not changing what math. We're not defining that he needs special education and special education as it's defined, especially design instruction, adapting the curriculum, the methodology of the curriculum. Right. But what we are saying is under the 504 agreement, he's going to be taken care of in terms of his liberal access to the bathroom. He can carry food with him. He can go to the nurse whenever he needs to. If he has more than five days of absence, the teacher is required then to modify assignments. But what about the finding regarding his inability to assess and organize all this information and the finding that he can't focus and the finding that he's fatigued and doesn't have energy? That would seem to me to be related to a disease. That's more than just he needs bathroom time. Isn't that correct? Right. But it would relate to absences. And it doesn't tie back to the factors, for instance, in the psychiatric report that was in the East Pennsboro evaluation about his motivation and his attitude and that he refused to do stuff, that we can't necessarily, the purpose of the IDEA and Section 504 isn't to ensure that all students get A's and B's. It's to ensure that students have access to the educational environment. Probably back at the very beginning, I thought East Pennsboro did evaluate J.C. and determined that he was eligible under the IDEA. That's correct. And the school district, Cumberland Valley, said he's not. So don't we have to resolve that? Yes. And the key factors that you should consider in that is that East Pennsboro had the information that was withheld from the Cumberland Valley School District. And what was that? I'm sorry. Go ahead. So the Cumberland Valley School District requested permission for a psychiatric evaluation. And the parents denied that permission. And they said, we're going to get our own and provide it to you. And then they did not provide it to us. So the district court is saying this evaluation is missing critical... Independent, or I'm sorry, wasn't the psychiatric evaluation done? It was. And it was provided to East Pennsboro, but never to Cumberland Valley. And so East Pennsboro had the benefit of a psychiatric evaluation that says, this is a student who does have a drug problem and needs to get sober, needs to be in treatment. This is a student who has motivation problems. But in the end, East Pennsboro didn't even provide specially designed instruction. He was 100% in regular ed. It was a 504 plan on enrollment. It was an IEP form. The district court never did that second prong. Does he need specially designed instruction? And the principle that we're asking is that if the parents withhold information from the district as part of their evaluation process, the district court should not be holding that against the district. So in this case, the school district also requested permission to speak with JC's doctors. And the parents said no. They said, okay, well, we could have found out more about the motivation, more about the lethargy, but we couldn't because they withheld that permission. But do you find, in the hearing officer's analysis, do you find that he's saying this is just a poorly motivated kid who is a behavioral problem? I mean, there's a footnote about this incident on January 17th, and I quite frankly think that this was probably part of the problem, that they suspected that drug use was there. But I don't find in this the fact that he's just a behavioral problem.  Is it in there? It's not just that he's a behavioral problem. But if I can give you an example, if you look at the time... What is it other than Crohn's disease that is giving him the problem? It is drugs, it's motivation, it's wanting to be with his friends and not want to be in school. Where is that in the hearing officer's findings? It's not in the hearing officer's findings. It's in Dr. Brent's evaluation in the East Pennsboro evaluation. But the hearing officer said it's not linked to Crohn's disease. What was it then? What was it linked to? It's a student who has a D average. That happens. This is a student who... But he's not learning the way other people do. He's having fatigue, energy problems. He can't focus. He can't organize material. If we go all the way back into 6th grade, 7th grade, 8th grade... No, I'm talking about the last three years. The last three years. Yeah, but if we go all the way back, he's still having 16, 17 absences all through middle school. This is typical for the student's performance. Didn't it worsen? It worsened in the last three years. It definitely worsened. And if we look at the time period when his own doctor said he can go to VOTEC in the afternoon and he goes for two days... He actually went for two days and four partial days. So he missed... He attended six out of 30 days. And that's after the 504 is in place. That's just a student refusing to go to school. Is that what that is? Okay. And if you read the homebound instructor's notes, you'll see the homebound instructor saying, it's just refusing to participate. And that doesn't mean that the district wasn't willing to accommodate, wasn't ready to accommodate. It wasn't saying, this is a student who needs no support. It was that he needed a 504. Why... the district court found that the hearing officer should have credited the independent evaluation. And the independent evaluation makes detailed recommendations or instructions for specialized instruction. Why wasn't... Why didn't the hearing officer take that into account? Isn't that enough? The hearing officer gave the independent evaluation less weight, partially based on its finding that JC had a specific learning disability. And that was contradicted by her own testing. Her own testing showed him in the average range. The only specially designed instruction that the independent evaluator suggested was for math. Everything that's related to attention, everything that's related to Crohn's disease is an accommodation. And that's what a 504 is for. So the dispute that the district court didn't get into is they didn't even consider that second prong, the need for specially designed instruction. And the hearing officer saying, it's not math. You're wrong on math. Do you believe that needs special education is confined to academic performance or should it include the whole aspect of the child? Well, as defined in the IDEA, the need for special education is special education and related services. But we have not defined it. Other circuits have expanded on what needs special education means. Right. And some of them say it's whether he could be... whether his situation would improve with it. Some have said it's societal. Others have focused on academic. What is it? I'm concerned by the district courts just saying he needed special education without explaining he needed specially designed instruction. But I'm asking you, in a district court's determination, in the hearing officer's determination, needs special education. What should he or she look at? You either need one or two things. You either need specially designed instruction, which is defined in the regulations as adapting as according to the needs of the kid. And that's more methodology than subject matter. Well, it could be subject matter, the content of the curriculum. For instance, a life skills student may need instruction in toy living, which isn't part of the normal curriculum. And so that's specially designed instruction. So it can be content driven. But that's a term of art under the IDEA. So it's either you need accommodations or you need specially designed instruction. It's one of the two, depending on the student's needs. I always thought that the behavior of the student and the ability to cope and to deal with life in the school was an important part of this. And you couldn't just cabin the need for special instructional education in a way that the IDEA evaluation and accommodation would be prevented under these circumstances. I've never seen the kind of dichotomy that you're describing here today. The IDEA and IEPs are one aspect of special education. You have students in there who have one of the enumerated disabilities by Congress, whether it's autism or specific learning disabilities or intellectual disability. There is a huge category of students who are under 504 service agreements because of medical conditions, whether that be celiac disease or peanut allergies or Crohn's disease or eczema. And because of it need to be accommodated in the school environment. It doesn't mean that those students don't need supports, whether it be they need nurse support or they need extended time from the teacher or they need the ability to make up work because they're absent. The question of which box you go into is determined properly by a school psychologist. In this case, the school psychologist looked at all of the records and all of his needs and did her own testing and said he's smart. His test scores are average across the board. He should be accommodated. It's not to say we're not going to help you. You're on your own with difficult grades. It's we're going to do these things for you because that's what your constellation of needs says you need. But it's not what the district court says of not providing anything to the students. A lack of parental cooperation in providing availability for testing. Is that disqualifying, automatically disqualifying? Well, the regulations indicate that if the district does not get consent for what it's supposed to, what it wants to do, it's not supposed to be held against the district. So the regulations, Congress has explicitly promulgated that through the regulations through the department that parents have a right to privacy. If they don't want to allow us to have a psychiatric evaluation, they have a right to that. But then you can't later sue and say how dare you not find that information that could have been found out through the psychiatric. Well, there is observable conduct you can and they're basing their case on that. Yes, in this case, the school psychiatrist did conclude that he did not meet the criteria for an emotional disturbance, which is looking at that area. You know, the hearing officer doesn't doubt that he needs special education. But special, no, no. In this case, the parents must prove the student required special education by reason of the Crohn's disease. Nothing in the record establishes that he required special education by reason of the Crohn's disease. He's assuming that, and he says regardless of the briefs, that the student had limited vitality due to a chronic health problem. It seems to me like they're wanting to link what he's doing to Crohn's disease and rule out every other possibility. But that was the argument advanced by the parents. At the due process hearing, the parents had advanced that it was eligible under other health impairment because of Crohn's disease. And the hearing officer assumed that they met, that Crohn's disease met prong one. But then the question is, did they prove prong two? And the hearing officer said no. And the district court reversed without actually considering prong two. That's why we're here. District court did not do the analysis of where in the curriculum are we modifying? Were there teacher comments that were input for the hearing examiner? Yes. Yes. There's extensive teacher input and the homebound instructor input all throughout the evaluation report, along with the academic transcript, which indicates things like failure to do work, failure to, is capable of better work, things like that. Thank you, your honors. Back in rebuttal, Ms. Grant. May it please the court, Judith Grant for JC. With me in the courtroom is Mr. Kevin Colley, the father of JC, and my co-counsel, Philip Drumheiser. Did the school basically give you everything you asked for in connection with what it did under the 504 accommodations? Did the school district give the family what they asked for? No. The accommodations that the school district put in place basically addressed attendance. And what would happen if JC were absent from school for a period of time? And the response was that he be given an opportunity to make up work, which really didn't help him. I think the abundant evidence in the record shows that JC clearly needed specially designed instruction. There can't be any doubt on this record that he should have been evaluated much earlier than he was. He began to... But he was performing well in his subjects, right? Well, no. Unfortunately, he was not. He had a D average beginning in seventh grade. Every year, beginning in seventh grade, he had a D average in the low 70s. And he failed numerous courses. Is this because of Crohn's disease or is this because he has behavioral issues? It was because of Crohn's disease. How do we know that? Well, because one of the consequences of his Crohn's disease, and he has a particularly serious manifestation of it, is that he's very fatigued. He's always tired. He spends an enormous amount of time in the bathroom. There are teacher's notes in the record. The teacher's running notes for a period of a few months after the parents asked for the time just in the bathroom. He was in pain, in discomfort. But what the district never evaluated properly was his difficulty with attention. Only after the parents asked for an evaluation in January of his 10th grade year, his last year in the district, did the district even try to evaluate his difficulty with attention. And the district should have identified him as a student with attention deficit disorder of the inattentive type. Was there any testing done that would have proven ADD or ADHD? Yes. Actually, the district's own evaluation included the Connors continuous performance test. And the finding on that test was that there was a 76 percent chance that he had clinically significant attention deficit disorder. And the independent evaluator found that he did? The independent evaluator confirmed that by doing four additional tests. And each one of them showed a high level, a clinically significant level of difficulty with attention. Does ADD automatically mean you need special education? It doesn't automatically mean that. But in J.C.'s case, it did, as you can see from the recommendations of the independent evaluator. And those are around pages A, 189, and 90. She recommends such things as individualized instruction in mathematics, using a structured, sequential, step-by-step approach for his academic subjects. She recommends different methodology. If specially designed instruction is defined as a change in the content methodology and delivery of instruction, the recommendation she made clearly apply. She recommended that he not be required to complete all of the assignments that typical students are required to complete, which would be a modification of the general curriculum. What do we take, though, from the behavioral aspects? The fact that he didn't want to do this and he wasn't motivated and, you know, where do you draw the line between that and is this Crohn's disease or is this just a youngster who is behaving badly or is on drugs or whatever? Well, there are lots of students in schools who are not particularly motivated, who have problems buckling down. And we can't give them all special education. No, we can't. And in J.C.'s case, the district did an evaluation and it was their job to determine whether his difficulty with doing work, his apathy, his listlessness, his tiredness, his difficulty getting out of bed and going to school in the morning, the fact that he was sleeping in class, putting his head down and falling asleep. The district had the job of determining whether that was due to a disability or not or whether it was just bad behavior. There is a process for doing that, a functional behavioral assessment. The district claimed to have done one, but it really didn't. There's nothing in their evaluation that ascribes a function to the behavior that they complained about. And incidentally, it's a red herring to say that the parents refused permission for the district to evaluate J.C. You mean with a psychological examination or what? Evaluate him in what way? Well, let's start with the medical evaluation. They asked for permission to get information from J.C.'s physician. They could have done their own medical evaluation if they had desired to, but that's really not important because the doctor wasn't going to be able to describe the academic consequences or the consequences for J.C. in school of his physical condition. He had described it. I think everyone knew that he was being hospitalized at times for it, that he was out of school a lot with excused absences, that he was going to the nurse. That was all well known. The lack of permission for the district to do a psychiatric evaluation, as my colleague has indicated, the parents did obtain a private psychiatric evaluation. The district asked them for permission to do this evaluation in late March. On April 1st, the parents returned the district's request for their consent with a notation that they would seek their own private independent evaluation. And was that given over to Cumberland? A week later, the district expelled J.C. for a year. It was not given over to Cumberland? There was not time for them to get an independent psychiatric evaluation and give it to the district in time to complete its evaluation, which was... Was the intent to give it to Cumberland once it was done? I think there was, but... It would have been, except he was expelled. He was expelled. He was no longer in school. They had to find another school district for him. And then a psychiatric evaluation was given to these parents. Yes. And they gave him special... Right. When was home instruction underway? In April, early April 2014. So it was almost the end of the year. Why did that not work out? Well, for one thing, he had been expelled from school and the parents were busy finding him. That was April, but he was expelled in May? No, his expulsion became effective on May 8th. That's what I thought. So he was expelled in May. Right. And the home instruction took place when? In April? In April. But that didn't work out? Well, one of the reasons it didn't work out is that what the homebound instructor reported was that when he came to the home to instruct J.C. during school hours, he was fine. He was attentive and he worked hard, which is further evidence that with individualized instruction, J.C. could learn. So what went awry? One of the things that went awry was that the homebound instructor would show up after school hours. I think, frankly, J.C.'s disaffection from school with all that had happened up to that point and the difficulty he was having in class contributed to a lack of motivation. But he wasn't unmotivated all the time. He did work and he did learn. So what should be done here in order to get the most benefit for this particular child? Well, he's out of school now. The Judge Jones held that he was entitled to compensatory education. The party stipulated to an amount of compensatory education that he would receive if this court affirms Judge Jones. And I think that holds the best prospect of making him as whole as he can be. The school district characterizes this case as the district court overruling a school psychologist. That's not the standard of review. The case law is very clear on that, going back to Scott P versus Carlisle. The appropriate standard is preponderance of the evidence. The district court did what it is supposed to do. It received the record of the administrative hearing, including the evaluation by the independent evaluator. It admitted additional evidence in the form of the IEP and re-evaluation by the East Pensborough School District. And it rendered its decision based on the preponderance of the evidence. And I believe that is correct because the preponderance of the evidence, not only the school district's evaluation and the reports of teachers over the years, the reports of J.C.'s grades, his absences, the fact that no one did anything about that, the record of the hearing, there was a witness called who was J.C.'s math teacher in eighth grade. And J.C. was failing math in eighth grade. He barely got through it by the skin of his teeth. And the teacher didn't remember him. Nobody seemed to really remember what, if any, effort to address J.C.'s problems was taken, other than blaming him for bad behavior. When you step back in a case like this, Crohn's disease is obviously a baddie. It's not good at all. And when somebody has that type of condition, wouldn't the usual thought be we need to do a lot of accommodating in order to make sure that this student learns as much as he can? And that's what they did here. So then the question then becomes, is Crohn's disease make you eligible under the IDEA for an individual educational program? Not automatically. But if it causes a lack of vitality, which in this case it clearly did, that interferes with a student's availability for education, then it certainly can. Are there any other cases that you know of where Crohn's has been diagnosed, well, I guess East Pennsboro, I suppose, by a school district for an IDEA individual education plan? I cited two cases in the brief from administrative tribunals. An analogy might be chronic fatigue syndrome. And we cited some cases where students had been identified as IDEA eligible because of that. But here, JC also had clinically significant attention deficit disorder, which was clearly interfering with his ability to benefit from education. For him to sit through a class, pay attention, absorb the information. As Judge Rendell said, he learns differently. And that requires specially designed instruction and not just accommodation. I think an error that the school district and the hearing officer both made is by applying something like a rational basis standard to this. Well, it could be something else that is causing the problem. It could be drug use. It could be lack of motivation. IDEA doesn't allow a school district to evade its responsibility by saying it could be something else. This is a particularly complicated case, is it not? I don't think it's terribly complicated, Your Honor. I think... I mean, you've got not just Crohn's, but you have behavioral issues and conceivably other things that are going on, maybe alcohol, maybe drugs. I don't know. But it seems that there's a whole lot of things going on here that make it very difficult for this particular individual and also for those who are trying to deal with the situation here. I would imagine East Pennsboro has the same problem. Yes. I agree. JC has a complex profile. And I think that is why the independent psychologist recommended placement outside the district in a private school for a school that specializes in students with significant learning differences. And at one point she said it would be very difficult for him to get an appropriate education in a public school. Now, where is he now? Did he finish high school somewhere? Or... He got his GED. Yes. So what he got ultimately from East Pennsboro was, I think, too little, too late. Would you take issue with what the hearing officer said? The parent's private evaluation included much testing, but offered conclusory results. No, I think the independent evaluator certainly did much testing, and I think that's commendable that she administered four tests of attention deficit disorder rather than one, and not even drawing a conclusion from that. But her analysis is much more informative and relevant than, I think, the school district's evaluation. That may be a good segue to rebuttal by Mr. Waltz. Yes, thank you. Thank you. What about the ADHD? Your Honor, the school district administered two different assessments to look at that. One indicated that it was possible. The other indicated that it was average range, and the school psychologist did not say he has no attention difficulties, but concluded, again, not a need for specially designed instruction because of attention. Meaning, we can accommodate that. We can meet his needs through the 504 point. Now, this would have... But how about... I'm looking now at the independent evaluation from like 182 on. All these tests and the adaptive behavior, 1 percentile, 16 percentile, 9 percentile, attention executive functioning. All of these tests and conclusions regarding the impact of Crohn's disease on his ability. He's unable to maintain his attention in listening situations requiring sustained effort. Well, that's called school. I mean, current test indicated level of... I mean, there's a lot here. How is it the hearing officer appropriately discounted these recommendations as conclusory? The hearing officer looked right back at the school psychologist conclusions from Cumberland Valley, who said his attention... Here are three different assessments of attention, and it appears within normal limits on the cognitive assessment. It appears within normal... Where is that in the hearing officer's report? In the hearing officer's decision? Yes. I'm not sure that he delved into the attention deficit disorder, because that was not raised by the parents at the time. That's an argument that they've now raised on appeal as kind of a secondary theory of liability. His whole point is that this is all happening to him, but it's not Crohn's disease. That's what he says. There's no link to Crohn's disease. Really? Well, no. The link is, if you're going to miss 30 percent of instruction, why are you having unexcused and unlawful absences? Why are they unlawful? He's not saying that, but when I'm looking at the record, I'm saying, okay, I'm looking at what he's looking at. If I look at the students' grades for ninth grade, I see that he's middling in the low D average on grades. He has D60s, low 70s, 60, 60, mark in period one, mark in period two, mark in period three. And mark in period four, miraculously, he is 90 percent in almost every subject and passes for the year. That signals not that Crohn's, that's not an indication that Crohn's disease is impacting his grades. They didn't present testimony from Dr. K. They just put her report in the record. So there wasn't a link to say, he missed 24 days, and here are the excuses that it all shows it was because of Crohn's. In fact, the evidence in the record is that he's refusing to participate in instruction. He doesn't want to do that, that even his own doctor at the beginning of 10th grade said he needs liberal bathroom privileges. His own doctor should know best what he needs. So if the school district was providing what his doctor said, that should be enough for the courts as well. All right. Thank you. Thank you. Thank you both, counsel. Very well presented arguments. I'll take them out of under advisement.